HUBBART, Judge
(dissenting).
I must respectfully dissent. I would reverse the criminal contempt conviction under review because, in my view, counsel’s two comments, which were made during opening statement to the jury in a murder trial and upon which counsel was found in contempt, did not individually or in combination constitute an “act which [was] calculated to embarrass, hinder, or obstruct the court in the administration of justice or which [was] calculated to lessen its authority or its dignity,” Ex parte Crews, 127 Fla. 381, 389, 173 So. 275, 279.(1937), and therefore cannot constitute a criminal contempt under the law of this state. Clein v. State, 52 So.2d 117, 119 (Fla.1950); Thomson v. State, 398 So.2d 514, 517 (Fla. 2d DCA 1981).
Counsel’s first alleged contemptuous comment was, “I know who killed Pat Ian-nuzzi” (the homicide victim in the murder case being tried). The court below concluded in its judgment of contempt, and this court agrees, that this was a contemptuous comment solely because it was uttered in violation of an alleged specific warning by the court to refrain from making such comments. This claimed warning, however, was not given at any time during the course of this trial, compare Kleinfeld v. State, 270 So.2d 22 (Fla. 3d DCA 1972), cert. denied, 275 So.2d 251 (Fla.1973); it was given to counsel in an unrelated case involving the same defendant, which case had been tried before the court six months prior to the instant case. This circumstance alone, I think, should take counsel’s comment out of the category of a criminal contempt, as it is perfectly obvious that admonitions of this nature made to counsel during the trial of a prior case do not rise to the level of perpetual court orders binding counsel forever after as to all future trials in all future cases conducted before the same judge. See Carroll v. State, 327 So.2d 881 (Fla. 3d DCA 1976) (improper voir dire questions by counsel did not rise to the level of a criminal contempt in the absence of a specific prior warning by the court in that trial to refrain from such questions).
Beyond that, the exact wording of the court’s six month old warning is not revealed by this record and, in any event, was given solely in response to the following comment made by counsel in the prior case, “I believe my client to be innocent.” (contempt judgment, p. 1 n. 1). By way of contrast, the offending comment in the instant case did not constitute a personal opinion on the guilt or innocence of counsel’s client, as was true in the prior case; instead, the offending comment was, as the trial court found in the judgment of contempt, “an assertion of personal knowledge of the facts in issue.” (contempt judgment, p. 1). It is, therefore, clear that counsel did not violate any prior warning of *1203 the court, even assuming the warning was still viable six months hence in an unrelated case.
After counsel had uttered the first comment, the trial court immediately admonished counsel in the presence of the jury by stating that the comment was “slightly improper.” Whereupon, counsel immediately stated, “Oh, Judge, I am sorry.” The court then held a sidebar conference with counsel, informed counsel that the above comment was an improper remark, that counsel knew “from the past” that this was an improper remark, that the court was holding counsel in contempt for making the remark, and that a hearing on the contempt charge would be held later. When counsel attempted to justify the comment, the court responded that the remark was improper, that counsel was being held in contempt, and that a hearing would be held following the trial. The court then concluded, “You are not to state any opinions. It is irrelevant and improper and you know it.” This statement is contrary to the court’s later conclusion in its judgment of contempt that the comment was improper because it constituted an “assertion of personal knowledge of the facts in issue.” (contempt judgment, p. 1). When counsel, quite properly pointed out that he had expressed no personal opinions, the court stated, “Well, I take it to be an opinion.” Counsel responded that he had been cut off; whereupon the court stated that these matters would be taken up later in a contempt hearing. The bench conference concluded at this point.
Counsel then went back before the jury and attempted to clear up what he had been erroneously told by the court was improper about his prior comment, namely, that he had expressed a personal opinion about the case. Counsel stated to the jury as follows:
“MR. BRESLIN: Let me straighten out that statement I just made.
I said I know who killed Pat Iannuz-zi. Obviously I wasn’t there. I don’t mean to indicate to you any opinion that I have, because that is totally improper, and please don’t take it that way. What I was going to say to you, is that I know because I have been told — well, I have been told by my client what happened.
MR. GILBERT: Objection, your Hon- or. He is testifying.
THE COURT: I will sustain the objection.
MR. BRESLIN: My client in this case, Mr. Alex Hoyas, knows what happened in this case and, obviously, throughout the course of my investigations, he and I have talked. He is going to tell you about the facts. He’s going to take that witness stand and tell you what happened that night. Now, when you hear what happened that night from Mr. Alex Hoyas, and you look at all of the evidence in this case, where everything was located, where everybody was, and after you listen to all the witnesses that have testified on behalf of the State and you compare that testimony to the testimony of Mr. Hoyas, you are going to know who killed Mr. Pat Iannuzzi. You are going to know why Pat Iannuzzi was killed, and you will know why exactly every one of these witnesses testified the way they did.”
(Appendix at 209-10) (emphasis added).
Counsel’s second alleged contemptuous comment is the italicized portion of the above-stated comments, although counsel was not so informed at the time. The court below concluded in its judgment of contempt, and this court agrees, that this comment was contemptuous because it was uttered in violation of the same above-stated warning given to counsel six months prior to this trial in an unrelated case. For the reasons already developed with reference to the first alleged contemptuous comment, this determination was plainly erroneous.
This court also concludes that the second comment was contemptuous because it violated a prior warning given by the court in this case, presumably at the bench conference discussed above. The trial court, however, made no such determination, as it is quite clear from the record that counsel was merely attempting, in a respectful *1204 way, to clear up what the court had erroneously criticized concerning his first comment, and was in no way attempting to defy the court’s prior ruling in the case. Indeed, the court in its judgment of contempt stated that counsel was being held in contempt as to both of the offending comments solely because of the warning given by the court six months ago in an unrelated case, and not for defying court rulings in the case being tried, (contempt judgment, p. 1).
I agree that minor ethical infractions may have been committed by counsel in making the above-stated comments, see Fla.Bar Code Prof.Resp. D.R. 7-106(C)(3), but I am unwilling to elevate these minor infractions to the level of a criminal contempt. I think it entirely unauthorized under the law of this state as it is plain that counsel committed no act which was calculated to embarrass, hinder or obstruct the court in the administration of justice or to lessen the court’s authority or dignity. Thomson v. State, 398 So.2d 514 (Fla. 2d DCA 1981); Litus v. McGregor, 381 So.2d 757 (Fla. 5th DCA 1980); Krueger v. State, 351 So.2d 47 (Fla. 3d DCA 1977); Carroll v. State, supra; see also Fisher v. State, 248 So.2d 479, 487 (Fla.1971).
I would reverse.